**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EVEREST COACHING SYSTEMS, INC.**, a Texas corporation<br><br>                    Plaintiff,<br><br>      v.<br><br>**DANIEL BAI**, an individual; and **EVEREST COACHING SYSTEMS, LLC, dba CLOSE FOR CHIRO,** an Illinois limited liability company<br><br>                    Defendants. | Civil Case No.:<br><br>**COMPLAINT  AND JURY TRIAL DEMAND** |

## <u>COMPLAINT</u>

Plaintiff Everest Coaching Systems, Inc., by counsel, alleges as follows for its Complaint against Defendants:

### <u>PARTIES</u>

1.      Plaintiff Everest Coaching Systems, Inc. is a corporation organized and existing under the laws of Texas, with a principal business address of 725 Stonebridge Road, Frankfort, Illinois.

2.      Upon information and belief, Defendant Daniel Bai is an individual residing at 601 Vanderbilt Drive, New Lenox, Illinois and is the founder, principal, officer, director, manager, and member of Defendant Everest Coaching Systems, LLC and regularly conducts business within Illinois.

3.      Defendant Everest Coaching Systems, LLC, currently doing business as Close for Chiro, is a limited liability company organized and existing under the laws of Illinois, with a principal business address of 20550 S. Lagrange Road, Suite 220, Frankfort, Illinois 60423.

## JURISDICTION AND VENUE

4.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq* under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*, and under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) and 15 U.S.C. § 1121(a).

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).  These claims are so related to the other claims in this case over which this Court has original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the acts giving rise to the claims herein arose in the Northern District of Illinois.  Plaintiff is informed and believes, and based thereon alleges, that Defendants market advertise, sell and deliver products and services described herein in Illinois through various internet websites that display the services, using the infringing trademark, service mark, copyright, and trade secrets described here in.

7.     In addition, venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business within this district and have the requisite minimum contacts to satisfy personal jurisdiction within this district.

## FACTUAL ALLEGATIONS

## THE FORMATION OF EVEREST COACHING SYSTEMS

8.     Everest Coaching Systems ("Everest") now known as Everest Coaching Systems, Inc. ("Everest, Inc.") is a company that provides business consulting to chiropractors to assist them in building a successful chiropractic practice, including providing educational courses both online and at in-person live seminars.

9.     In the 1990s, Barry Anderson, a chiropractor, started toying with the idea of providing business advice to his fellow chiropractors about how to be successful in the field. He started providing coaching sessions to his friends in the chiropractic community.

10.    In 2003, Anderson started brainstorming about creating a full-fledge consulting business that would assist chiropractors in forming a thriving chiropractor practice, by giving them advice on developing stronger relationships with pre-existing patients and how to find new patients. Anderson even began working on creating a training manual that would provide step-by-step instructions on how to grow a chiropractic practice, including a protocol on how to communicate to patients.

11.    Over the next several years, Anderson began to write what would become the Everest Official Training Manual.

12.    At the beginning of 2011, Anderson started doing business as Everest as a sole proprietorship and recruited clients for coaching sessions. As the founder of Everest, Anderson was the driving force behind the company, and ran all the business operations of the company, including managing all of Everest's finances.

13.    On January 30, 2011, Anderson registered the domain name www.everestcoachingsystems.com and shortly thereafter began using the website to promote Everest.

14.    On April 8, 2011, Anderson filed a Certificate of Registration of Assumed Business Name with the Will County Clerk disclosing that he would be doing business as Everest Coaching Systems. Attached as **Exhibit "A"** is a true and correct copy of the Certificate of Registration of Assumed Business Name.

15.    By July 16, 2011, Anderson was already posting videos on YouTube, where he appeared alone, to promote Everest and provide business tips to potential clients regarding building a successful chiropractic practice.

16.    Sometime in 2011, Defendant Daniel Bai ("Bai"), another chiropractor in Illinois starting working with Everest as an independent contractor.

17.     Everest started out by providing one-on-one coaching sessions to chiropractors interested in growing their business. At the sessions, Everest would supply its clients with the training manual Anderson had been developing since 2003.

18.     On or about January 9, 2012, Everest launched its public Facebook page which provides information about upcoming Everest events and includes regular posts including videos created by Everest, posts of current issues, and information to market the services of Everest. Later on, Everest created private Facebook pages with access limited to members who signed up for Everest's services.

19.     On August 2012, Everest launched is first weekend BootCamp, where Everest provided an extensive two-day long live educational seminar to its clients on how to run a successful chiropractic business.

20.     During this time, Bai would participate in making presentations at seminars, participated in making videos for YouTube, and helped with the technological needs of Everest. During the course of Bai's relationship with Everest he was entrusted with the passwords for Everest's domain names, websites, social media accounts, PayPal accounts, Litmos account, and Infusionsoft account.[1]

21.     Eventually, Everest expanded its BootCamp services to include the Life Effect Lab and Virtual BootCamp and both are meant for Everest's original BootCamp graduates and are considered BootCamp 2.0.

22.     In addition, to the one-on-one coaching sessions and weekend BootCamps, Everest also provided clients with a monthly subscription service. Clients signed up online and paid a monthly fee so that they could receive monthly materials and lessons about building a successful chiropractic business.

---

[1] Infusionsoft is a software program used by Everest, Inc. that among other things, holds all of Everest, Inc.'s customer information, creates the invoices and billing for Everest, Inc., maintains analytics for Everest, Inc.'s customers, and tracks emails sent from Everest, Inc. to its customers, including who has viewed the emails and who signed up for services because of the email.

23.     In or around May 2013, Everest introduced its online Everest PhD course.  This course allows subscribers who had attended an Everest BootCamp to subscribe (for a monthly fee) to a library of online Training Modules, exclusive access to the Phd Member Forum, Live Q&A Webinars on the last Thursday of every month, and daily interaction with Everest Coaches and Everest PhD doctors. Everest PhD is also an online training system that used www.Litmos.com, which is an online training portal that tracks the progress of subscriber learning.   Included in the monthly subscription fee, a training module was released to a subscriber in a sequential manner every month.

24.     Also, in or around June 2013, Everest rolled out its online Master Business Actions ("MBA Online") course.

25.     Anderson continued to run Everest as a sole-proprietorship and traveled throughout the country putting on intensive weekend BootCamps for attendees.  Anderson would coordinate the events, direct Bai where his assistance was needed, and present to the attendees, sometimes along with Bai and other guest speakers that Everest would retain.

26.     In or around October 2014, Anderson was diagnosed with Stage 4 Leiomyosarcoma cancer.  However, Anderson remained actively involved in Everest.

27.     On or about January 13, 2015, Anderson converted Everest from a sole proprietorship to a corporation known as Everest Coaching Systems, Inc. ("Everest, Inc."). Everest, Inc. was incorporated in the state of Texas.  The sole shareholder was Anderson and the directors were Anderson and his wife, Barbara Anderson ("Barbara").

28.     On or about January 17, 2015, Anderson caused a number of new domain names to be registered including www.everestclosers.com; www.everestcloses.com; www.sellpushclose.com; and www.closeforchiro.com.

29.     On or about March 12, 2015, Anderson authorized the transfer of the domain names that were created on January 17, 2015 to a new server and Bai assisted Anderson with that process as one of Bai's responsibilities as an independent contractor of Everest was to assist with the technological management of the Everest website.

30.     On information and belief, sometime between April 16, 2015 and May 17, 2015, Anderson caused all website traffic to www.everestcoachingsystems.com to be redirected to the recently registered domain www.everestclosers.com.

31.     On or about November 19, 2015, the United States Copyright Office issued a registration for the Everest Official Training Manual, 5th Edition as Registration Number TXu001969666/2015-11-19 for the benefit of Everest, Inc.  This is the very same manual that Anderson has been working on since 2003, long before he ever started working with Bai.

32.     In addition to the Everest Official Training Manual, Everest also created training manuals for most of its services, such as training manuals for its Life Effect Lab and Virtual BootCamp.  There are also numerous PowerPoint presentations developed for the Everest training courses and speaking engagements.  Bai is in possession of the majority of these materials and despite Everest, Inc.'s request that he turn them over he has failed to do so.

33.     Anderson also created numerous audio and video recordings of himself for Everest training, and some training recordings for Anderson and Bai together.  Many of these recordings are part of the monthly training modules developed for Everest Phd and MBA Online.  Bai has refused Everest, Inc. access to these recordings.  Upon information and belief, Everest, Inc. believes that there are recordings of Anderson that are in production and have yet to be released as a training module.

34.     On or about March 4, 2016, Anderson passed away from cancer.

35.     Following Anderson's death, Barbara became executor of Anderson's estate and Anderson's interest in Everest, Inc. was transferred to Barbara.  Barbara is now the sole shareholder and director of Everest, Inc.

**DEFENDANTS' ACTIONS FOLLOWING THE DEATH OF BARRY ANDERSON**

36.     On March 7, 2016, three days after Anderson's death, Bai visited Barbara and discussed with her the status of Everest, Inc.  Bai informed Barbara that he could not afford to buy the company from Barbara, but wanted to work out a business arrangement with Barbara,

where Bai would run Everest, Inc. and the he would split net profits with her 60% going to Bai and 40% going to Barbara.

37.     About a month or so after Anderson had passed, Bai and his wife met with Barbara at her house to talk about the company.  Bai suggested that Barbara sign over power of attorney giving him control of Everest, Inc., that she get life insurance listing Bai as the beneficiary, and that she sign a letter stating that if Barbara wanted to sell Everest, Inc. that she would first need to consult with Bai.  Bai assured her that she could terminate him at any time. During that meeting Barbara asked Bai to provide her with copies of the Everest, Inc. intellectual property materials but Bai responded by questioning why she wanted them.

38.     On information and belief, Everest, Inc. alleges that unbeknownst to Everest, Inc., by June 2016, if not sooner, Bai started redirecting the money earned by Everest, Inc. including money earned from BootCamp attendees and Everest Phd and MBA Online monthly subscribers to Bai's personal financial accounts.  Upon information and belief, Bai also diverted money Everest, Inc. should have received from other sources to Bai's own personal bank account.  This was made possible because Bai had sole control and possession of many of Everest, Inc.'s passwords, access codes, Litmos account, Infusionsoft account and PayPal accounts.  Based on a comparison of Everest, Inc.'s year-to-date gross income for 2016 as compared to last year's gross income, on information and belief Everest, Inc. alleges that Bai has converted an estimated $400,000 earned by Everest, Inc.

39.     Also unbeknownst to Everest, Inc., on or about August 30, 2016, Bai set up a competing company to Everest, Inc. and filed for a limited liability company in Illinois, with the name Everest Coaching Systems, LLC ("ECS, LLC").  Upon information and belief, Bai has been marketing, selling, and running ECS, LLC as his own consulting company to chiropractors.

40.     On or about September 7, 2016, Everest, Inc. noticed that its PayPal accounts were unusually low in funds with a decrease in deposits starting in or around June 2016. Everest, Inc. asked Bai for an explanation, but never received a response.

41.     On or about September 20, 2016, Everest, Inc. terminated Bai's role as an independent contractor. Attached hereto as **Exhibit "B"** is a true and correct copy of Everest Inc.'s letter to Bai terminating his role as independent contractor with Everest, Inc.

42.     Everest, Inc. also demanded that Bai turn over all property Bai had that belonged to Everest, Inc., including Everest, Inc.'s passwords, access codes, equipment, computers, intellectual property, manuals, video recording equipment, and customer information for customers throughout the country including, but not limited to, information about customers who subscribed to Everest, Inc.'s monthly subscription service, Everest Phd, Everest MBA Online, and Everest BootCamps ("Client List"). *See* **Exhibit "B."** Bai, however, failed and refused to do so.

43.     In September of 2016, Barbara, as Independent Executor of Barry's estate, opened a Probate proceeding in Will County, Illinois. On September 19, 2016, the Probate Court entered a Citation to Recover Assets against Bai arising out of the estate's demands for the property improperly taken and retained by Bai.

44.     At present, no hearing has taken place on said Citation, as Bai has filed a motion to dismiss the Citation, arguing that the Probate Court is not the proper forum for the dispute, and that it is Everest, Inc. that has the rights to the property in question, not the estate of Barry.

45.     Everest, Inc. is informed and believes that since the death of Anderson, Defendants have taken over Everest, Inc.'s website, domain names, social media accounts, access codes, Litmos account, Infusionsoft account, PayPal accounts, customer information and Client List and have denied Everest, Inc. access to its own property. Defendants' actions were not done in good faith, and were done for the sole purpose of misappropriating Everest, Inc.'s source of income.

46.     Defendants' misappropriation of Everest, Inc.'s property has allowed Defendants to start running their own competing business by using Everest, Inc.'s own property. Consumers who go on Everest, Inc.'s website are not aware that Defendants have unlawfully taken over Everest, Inc.'s website and when they register for an educational seminar, they are unaware that

they are paying Defendants and that Defendants will be providing the service, instead of Everest, Inc.

47.  Not only has Defendants unlawfully taken over Everest Inc.'s website, but they are also continuing to use the name, image, and likeness of Anderson on the website and social media accounts to promote the ECS, LLC business and mislead consumers to believing Anderson and/or his estate is associated with Defendants.

48.  Everest, Inc. no longer has access to its websites, its PayPal accounts, Litmos account, Infusionsoft account, its website, or domain names.  Although, Everest, Inc. can still access its Facebook account, Bai as the "creator" of the Facebook pages, has the power at any time to edit or delete the page without Everest, Inc.'s consent. Essentially, Defendants have improperly infiltrated Everest, Inc.'s business and have completely shut Everest, Inc. out of its own business.

49.  Customers of Everest, Inc. are also canceling their monthly subscription because they are unable to access the learning modules that they have subscribed to through Everest Phd. Everest, Inc. is unable to address its customers concerns as Defendants have failed and refused to provide Everest, Inc. with access to Litmos, Infusionsoft, and the other online resources utilized to support these online subscriptions.

50.  Moreover, Everest, Inc. has an upcoming weekend BootCamp, scheduled for October 28-29, 2016 at Gleacher Center in Chicago, Illinois.  Because Defendants have taken over Everest, Inc.'s website and Client List, Defendants have been contacting Everest, Inc.'s customers and informing them that Bai will not be presenting at the Everest, Inc. BootCamp and that they should get a refund from Everest, Inc. This has led to a number of doctors to call and email Everest, Inc., upset about the last minute changes.  In addition, Defendant Bai is now telling Everest, Inc.'s customers that he will have his own version of Everest, Inc.'s BootCamp the very same weekend.

51.  Upon information and belief, Everest, Inc. alleges that in or around October, 2016, Defendants had ECS, LLC assume the name of "CloseforChiro" and have taken sole

control of Everest, Inc.'s domain name: www.closeforchiro.com without authorization from Everest, Inc. and are operating a Facebook page under the name CloseforChiro.

<u>**DEFENDANTS' TRADEMARK AND SERVICEMARK INFRINGEMENT**</u>

52.     Between 2011 and the present, Everest, Inc. has used the following trademarks and service marks:

  

   

EVEREST, EVEREST COACHING SYSTEMS, EVEREST CLOSERS, EVEREST MBA, 2.0 EVEREST MBA, EVEREST PhD, EVEREST BOOTCAMP and Anderson's name and image ("Everest, Inc. Marks") in commerce and in connection with its consulting service and educational seminars (and associated training and instructional manuals and materials) to assist chiropractors in building a successful chiropractic practice.

53.     Through Everest, Inc.'s use, consumers have come to recognize the goods and services offered and sold under the Everest, Inc. Marks as emanating from a high quality source. Everest, Inc. has also spent tremendous resources, including time, money and effort, in the advertising and promotion of its goods and services. Everest, Inc. has carefully monitored and preserved the manner in which its Everest, Inc. Marks are used, and has gone to great lengths in its advertising and promotion to convey to consumers and the trade that goods and services sold under the Everest, Inc. Marks are of the utmost quality. As a result of these efforts, Everest, Inc. has achieved a strong reputation and immeasurable goodwill.

54.     As a result of Everest, Inc.'s long and continuous use of the Everest, Inc. Marks, as well as the surrounding goodwill, the Everest, Inc. Marks are famous. The Everest, Inc. Marks are distinctive, strong, and famous marks and are well known to the public and trade.

55.     Upon information and belief, Defendants are currently in the business of providing consulting services and educational seminars (as well as distributing and selling training and instructional manuals and materials) to chiropractors about running a successful chiropractic business.

56.     Upon information and belief, on or about August 30, 2016, Defendants began using the Everest, Inc.'s Marks: EVEREST, EVEREST COACHING SERVICES, EVEREST CLOSERS, EVEREST MBA, 2.0 EVEREST MBA, EVEREST PhD, EVEREST BOOTCAMP, and the image and likeness of Anderson to advertise their business to U.S. and international residents, including customers of Everest, Inc.

57.     On or about September 3, 2016, Defendants filed a U.S. Service Mark Application  (Application Serial No. 87/160,581) for:



covering "business consulting services in the field of building a successful chiropractic practice" in Class 35, "educational services, namely conducting programs in the field of building a successful chiropractic service; education services, namely, providing non-downloadable webinars in the field of building a successful chiropractic practice; providing education courses in the field of building a successful chiropractic practice offered through online, non-downloadable videos and instructor assistance" in Class 41 and "computer services, namely creating an on=line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in social networking services in the field of chiropractic practice" in Class 42 ("Infringing Mark").

58.     Defendants further claim in their service mark application that the date of first use of the Infringing Mark was in November 2011, which was after Everest, Inc.'s first use of the Everest, Inc. Marks.

59.     The services detailed in Defendants' application are substantially similar to those provided by Everest, Inc. to its consumers.

60.      Defendants did not have permission to use the Everest, Inc. Marks in a deceptive and confusing matter. Nor did they have permission to file for an application for the Infringing Mark.

61.     Defendants' unlawful use of the Everest, Inc. Marks is likely to deceive or confuse consumers into believing that ECS, LLC and Everest, Inc. are the same company.

62.     Upon information and belief, Defendants acted with willful intent when they decided to call their consulting business also Everest Coaching Services, use the Everest Inc. Marks, and file for a trademark application for Infringing Mark with the intention of using the goodwill and notoriety of the Everest, Inc. Marks, and in a manner likely to cause confusion and deception.

63.     Furthermore, Defendants do not have Everest, Inc.'s notoriety, positive reviews, market leader status, substantial membership, or lengthy history.

64.     Thus, any association with Defendants has, and will continue to, result in dilution of reputation, goodwill and notoriety of the Everest Inc. Marks and related brands.

65.     Defendants' actions show that they are intentionally attempting to confuse Everest, Inc.'s consumers and illegally gain market share by posing as Everest, Inc.  This unlawfully causes unsuspecting consumers to believe that they in fact buying services from Everest, Inc.

## DEFENDANTS' COPYRIGHT INFRINGEMENT

66.     Everest, Inc. created a training manual that provides step-by-step advice to its clients on how to build a successful chiropractic practice.  Everest, Inc. distributed its training manual to its clients at its educational seminars as the Everest Official Training Manual.

67.     The Everest Official Training Manual contains material that is wholly original to Everest, Inc. and is copyrightable subject matter under the laws of the United States.

68.     On or about November 19, 2015, the United States Copyright Office issued a registration for the Everest Official Training Manual, 5th Edition as Registration Number TXu001969666/2015-11-19 for the benefit of Everest, Inc.

69.     Everest, Inc. has been and still is the sole owner of all rights, title, privilege, and interest in and to the copyright in the Everest Official Training Manual, as evidenced by the true and correct copy of the certificate of copyright registration attached as **Exhibit "C."**

70.     Everest, Inc. also had other training manuals it would provide for its other services, such as a training manual specific for the Life Effect Lab.

71.     Upon information and belief, Everest, Inc. alleges that Defendants have been distributing the Everest Official Training Manual and Everest, Inc.'s other training manual and disseminating them to its consumers since June 2016, without a license from Everest, Inc. authorizing Defendants to do so, or making payments of any kind to Everest, Inc.

72.     Everest, Inc. has demanded, and hereby demands, that Defendants immediately cease and desists from distributing the Everest Official Training Manual or Everest, Inc.'s other training manuals.  Defendants, however, has failed and refused to comply and Everest, Inc. is informed and believes that Defendants continue, without authorization and in violation of Everest, Inc.'s intellectual property rights, to distribute the training manuals to third parties.

## FIRST CLAIM FOR RELIEF

### (FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1))

#### (Against All Defendants)

73.     Everest, Inc. hereby incorporates Paragraphs 1 through 72, inclusive, herein by reference.

74.     The goods and services provided by Defendants are substantially similar to those provided by Everest, Inc.

75.     Without Everest, Inc.'s consent, Defendants have used in commerce, in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods and services, marks identical  to or confusingly similar to the Everest Inc. Marks in a manner that is likely to cause confusion, mistake and/or deception with consumers that Defendants' goods and services are the same as of those of Everest, Inc.'s and/or that Defendants' goods and services are somehow associated, affiliated, connected, approved, authorized, or sponsored by Everest, Inc.

76.     Defendants' distribution and sale of training and instructional manuals and materials, offered services, and provisions of services are done in a manner which is intended to, and which does cause, confusion, mistake, and deceit among consumers.

77.     Defendants' continued used of marks identical or confusingly similar to the Everest Inc. Marks has caused and will continue to irreparable harm and injury to Everest, Inc. and to Everest, Inc.'s reputation and goodwill for which Everest, Inc. has no adequate remedy at law.  The threat of future injury to consumers to Everest, Inc.'s business, identity, goodwill, and reputation necessitates the award of injunctive relief to prevent Defendants' continued infringement of Everest, Inc.'s valuable trademarks.

78.     Defendants have unjustly profited from their infringement of the Everest Inc. Marks.

79.     As a direct and proximate result of Defendants' infringing activities as alleged herein, Everest, Inc. has suffered substantial damage in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

**WHEREFORE,** Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants have willfully infringed Everest, Inc.'s trademark rights under 15 U.S.C. § 1114;

B.     Ordering that Everest, Inc. is the exclusive owner of Everest Inc. Marks, and that said marks are valid;

C.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.     Selling, manufacturing, distributing, advertising, or publicizing any goods or services under the Everest Inc. Marks, the Infringing Mark, or any other mark, name, symbol, or logo that is a reproduction, counterfeit, copy, or colorable imitation of, incorporates or is confusingly similar to, or is substantially indistinguishable from Everest Inc. Marks and the Infringing Mark;

ii.     Selling, manufacturing, distributing, advertising, or publicizing any goods or services under the Everest, Inc. Marks, the Infringing Mark, or any other mark, name, symbol, or logo that is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Defendant's business, goods, or services are sponsored or endorsed by Everest, Inc., is authorized by Everest, Inc., or is connected in some way with Everest, Inc., or Everest Inc. Marks;

iii.     Representing or implying that Defendants are in any way sponsored by, affiliated with, or endorsed or licensed by Everest, Inc.;

iv.     Using Everest Inc. Marks, and other marks or domain names confusing similar to those marks alone or in combination with other letters, words, letter strings, phases, or designs, or the look and feel of in commerce or in connection with any goods or services;

v.     Using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants' or their goods with Everest, Inc. or as to the origin of Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;

vi.     Further infringing on the rights of Everest, Inc. in and to any of its trademarks, trade dress, products and services or otherwise damaging Everest, Inc.'s goodwill or business reputation;

vii.     Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 3(a) to 3(f) above.

D.     Ordering that Defendants be required to deliver to Everest, Inc.'s for destruction all advertisements, promotional materials, and the like that contain or feature the Infringing Marks or any other unlawful uses of the Everest Inc. Marks, or any other trademarks, service marks, names or logos, that are a counterfeit, copy, or colorable imitation of, confusingly similar to, or substantially indistinguishable from Everest Inc. Marks.

E.     Ordering that ECS, LLC be dissolved, canceled, or surrendered;

F.     Ordering that ECS, LLC changes its business entity's name so that it no longer infringes on Everest, Inc.'s Marks.

G.     Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid acts of infringement on violation of Everest, Inc.'s rights in the Everest, Inc. Marks;

H.     Granting an award of general damages suffered due to Defendants' infringing activities;

I.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

J.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

K.       Granting an award of costs of suit incurred herein;

L.       Granting an award of pre-judgment interest; and

M.       Granting such other and further relief as is just and proper.

## SECOND CLAIM FOR RELIEF

## (FEDERAL FALSE DESIGNATIONS, FALSE DESCRIPTIONS, AND FALSE ADVERTISING, 15 U.S.C. § 1125(a))

### (Against All Defendants)

80.       Everest, Inc. hereby incorporates Paragraphs 1 through 79, inclusive, herein by reference.

81.       Everest, Inc. is informed and believes that Defendants, by their acts alleged herein, willfully, knowingly, and intentionally, have deceptively and misleading described its goods and services in such a manner as is likely to confuse the trade, customers, and consumers.

82.       Defendants' marks are identical or substantially similar in appearance, sound, and connotation to the Everest Inc. Marks. Defendants' use of the Infringing Mark and of the Everest Inc. Marks in commerce in connection with the goods and services offered by Defendants, including commercial advertising and promotions, constitutes a false designation of origin and/or a false or misleading representation that is likely to cause confusion, mistake and/or deception with consumers that Defendants' goods and/or services are associated, affiliated, connected, approved, authorized, or sponsored by Everest, Inc.

83.       Defendants' conduct constitutes a false designation of origin and/or false or misleading representation that (i) is likely to cause confusion, mistake, or deception with the public and/or consumers as to the affiliation, connection, or association between Defendants and Everest, Inc.; (ii) is likely to cause confusion, mistake, or deception with the public and/or consumers as to the origin of the goods and services being provided and/or (iii) is intended to misrepresent the nature, characteristics, and/or qualities of the goods and services offered by Defendants by usurping Everest, Inc.'s respected brand name.

84.     Everest, Inc. is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with the Defendants, from engaging in further acts of false designation of origin from use of the Infringing Mark and of the Everest Inc. Marks.

85.     Everest, Inc. is entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of the Defendants' wrongful acts.  Everest, Inc. is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' act of false designation of origin.

86.     Everest, Inc. is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.  Everest, Inc. is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of false designation of origin.

87.     Because of the willful nature of Defendants' wrongful acts, Everest, Inc. is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

88.     Everest, Inc. is also entitled to recover its attorneys' fees and costs.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.      Finding that Defendants have willfully infringed Everest, Inc.'s trademark rights under  15 U.S.C. §1125(a)

B.      Ordering that Defendants be required to deliver to Everest, Inc.'s for destruction all advertisements, promotional materials, and the like that contain or feature the Infringing Marks or any other unlawful uses of the Everest Inc. Marks, or any other trademarks, service marks names or logos, that are a counterfeit, copy, or colorable imitation of, confusingly similar to, or substantially indistinguishable from Everest Inc. Marks.

C.      Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the

foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.      Falsely implying Everest, Inc.'s endorsement of Defendants' services or business, or engaging in any act or series of acts which, either alone or in combination, constitutes methods of consumer fraud and deceptive business practices  with Everest, Inc. and from otherwise interfering with, or injuring, Everest Inc.'s Marks, or the goodwill associated therewith;

ii.      Representing or implying that Defendants are in any way sponsored by, affiliated with, or endorsed or licensed by Everest, Inc.

iii.      Using Everest Inc. Marks, and other marks or domain names confusing similar to those marks alone or in combination with other letters, words, letter strings, phases, or designs, or the look and feel of in commerce or in connection with any goods or services;

iv.      Using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants' or their goods with Everest, Inc. or as to the origin of Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;

v.      Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 10(a) to 10(d) above;

D.      Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid acts of infringement on violation of Everest, Inc.'s rights in the Everest, Inc. Marks;

E.      Granting an award of general damages suffered due to Defendants' infringing activities;

F.      Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

G.      Granting an award of three times the amount of damages and increased profits pursuant to 15 U.S.C. § 1117 for Defendant's infringement of the Everest Inc. Marks;

H.      Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

I.      Granting an award of costs of suit incurred herein;

J.      Granting an award of pre-judgment interest; and

K.      Granting such other and further relief as is just and proper.

## THIRD CLAIM FOR RELIEF

### (DILUTION OF FAMOUS MARKS, 15 U.S.C. § 1125(c))

### (Against All Defendants)

89.     Everest, Inc. hereby incorporates Paragraphs 1 through 88, inclusive, herein by reference.

90.     Everest, Inc. was the first to use all the Everest Inc. Marks described herein in commerce.

91.     Everest Inc. Marks are distinctive and famous within the meaning of the Federal Trademark Dilution Act of 1995 for the following reasons:

a.      The mark is distinctive and represents a provocative phrase that is not merely descriptive;

b.      The mark is used extensively in connection with advertising for Everest, Inc.'s goods and services;

c. The mark is recognized widely among the general consuming public because of the unsolicited attention given by news media to Everest, Inc.'s business associated with the marks;

d. Prior to Defendants' infringing conduct, no other party used a mark similar to the Everest Inc. Marks in commerce in connection with the selling and offering for sale of goods and services that compete directly with Everest Inc.'s business.

92. Defendants' activities complained of in this Complaint constitute unauthorized use in interstate commerce of the Everest Inc. Marks or marks that are identical, or confusingly similar in appearance, sound and connotation to the Everest Inc. Marks. Defendants' activities were conducted with full knowledge of the Everest Inc. Marks and commenced after such marks became famous. On information and belief, such activities of the Defendants as complained of herein, are likely to dilute, have diluted, and will continue to dilute the distinctive quality of the Everest Inc. Marks by lessening their capacity to identify and distinguish Everest, Inc.'s services and goods by tarnishing such trademarks to the damage and harm of Everest, Inc., its customers, and the public.

93. As a direct and proximate result of Defendants' wrongful acts, Everest, Inc. is likely to suffer, has suffered and continues to suffer dilution of the distinctive quality and the tarnishing of the Everest Inc. Marks. Defendants will continue, unless restrained, to misuse the Everest Inc. Marks and will cause irreparable damage to Everest, Inc. Everest, Inc. has no adequate remedy at law. Everest, Inc. is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with Defendants, from using the Infringing Mark and the Everest Inc. Marks and from engaging in further acts of dilution.

94. Because Defendants' actions were willful, Everest, Inc. is further entitled to recover from Defendants the gains, profits, and advantages that Defendants obtained as a result of its wrongful acts. Further, on information and belief, Defendants began using its marks after Everest, Inc.'s first use of its Everest Inc. Marks. Everest, Inc. is presently unable to ascertain

the extent of the gains, profits, and advantages that Defendants realized by reason of Defendants' willful act of dilution.

95.     Everest, Inc. is informed and beliefs, and on that basis alleges, that Defendants committed the acts alleged above: (i) with previous knowledge of Everest, Inc.'s priority in and to the Everest Inc. Marks; (ii) with willful intent to trade on Everest, Inc.'s goodwill and reputation; and/or (iii) with the willful intent to cause dilution of the Everest Inc. Marks.  As a result, Everest, Inc. has been damaged in an as yet unascertained amount.  Because of the willful nature of Defendants' wrongful acts, Everest, Inc. is entitled to an award of treble damages.

96.     Everest, Inc. is also entitled to recover its attorneys' fees and costs.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants' activities are likely to, or have, diluted Everest, Inc.'s famous trademarks and service marks in violation of Everest, Inc.'s rights under 15 U.S.C. § 1125(c);

B.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.     Engaging in any act that dilutes or is likely to dilute the distinctive quality of Everest Inc.'s Marks, and/or injures or is likely to injure Everest Inc.'s business reputation;

ii.     Representing or implying that Defendants are in any way sponsored by, affiliated with, or endorsed or licensed by Everest, Inc.;

iii.     Using Everest Inc. Marks, and other marks or domain names confusing similar to those marks alone or in combination with other letters, words, letter strings, phases, or designs, or the look and feel of in commerce or in connection with any goods or services;

iv.     Using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants' or their goods with Everest, Inc. or as to the origin of Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;

v.     Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 16(a) to 16(d) above.

C.     Granting of general damages suffered due to Defendants' infringing activities;

D.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

E.     Granting an award of three times the amount of damages and increased profits pursuant to 15 U.S.C. § 1117 for Defendant's infringement of the Everest Inc. Marks;

F.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

G.     Granting an award of costs of suit incurred herein;

H.     Granting an award of pre-judgment interest; and

I.     Granting such other and further relief as is just and proper

## FOURTH CLAIM FOR RELIEF

## (COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 101 et seq.))

### (Against All Defendants)

97.     Everest, Inc.  realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-96 of this Complaint.

98.     Everest, Inc. created a training manual that provides step-by-step advice to its clients on how to build a successful chiropractic practice.  Everest, Inc. distributed its training manual to its clients at its educational seminars as the Everest Official Training Manual.

99.     The Everest Official Training Manual contains material that is wholly original to Everest, Inc. and is copyrightable subject matter under the laws of the United States.

100.    On or about November 19, 2015, the United States Copyright Office issued a registration for the Everest Official Training Manual, 5th Edition as Registration Number TXu001969666/2015-11-19 for the benefit of Everest, Inc.

101.    Everest, Inc. has been and still is the sole owner of all rights, title, privilege, and interest in and to the copyrights in the Everest Official Training Manual, as evidenced by the certificates of copyright registration.  *See* **Exhibit "C."**

102.    In addition, Everest, Inc. has been and still is the sole owner of all rights, title, privilege, and interest in and to the copyrights of all of its other training manuals.

103.    By using, copying, and otherwise exploiting the Everest Official Training Manual and Everest, Inc.'s training manuals without any license to do so, Defendants have willfully and knowingly infringed and continues to knowingly and willfully infringe the training manuals. Defendants' acts of infringement, which Everest, Inc. is informed and believes were obtained by outright theft, were willful, in disregard of, and with indifference to Everest, Inc.'s rights under copyright.

104.    As a result of Defendants' copyright infringement as alleged above, Everest, Inc. has suffered and will continue to suffer injury and damage in an amount to be determined at trial. Furthermore, Everest, Inc. is informed and believes, and thereon alleges, that Defendants have

received and will continue to receive profits, gains, or other benefits from their infringing activities, all of which should be disgorged to Everest, Inc. In the alternative, Everest, Inc. reserves the right to seek statutory damages for Everest, Inc.'s intentional infringement of the Everest Official Training Manual.

105. Defendants' infringement of the Everest Official Training Manual has caused and will cause irreparable harm to Everest, Inc., which cannot be adequately compensated by monetary damages. Everest, Inc. is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from further use and infringement of the Everest Official Training Manual and Everest, Inc.'s other training manuals.

106. In order to ensure that Defendants will cease all use of the Everest Official Training Manual and the other training manuals, Everest, Inc. further requests that this Court order the impounding of all copies of Everest, Inc.'s training manuals in Defendants' possession or custody.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A. Finding that Defendants have infringed Everest, Inc.'s copyright rights for its Everest Official Training Material and its other training manuals.

B. Ordering damages in an amount to be determined at trial, or in the alternative, statutory damages under 17 U.S.C. § 504(c), enhanced under 17 U.S.C. § 504(c)(2);

C. Ordering temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, servants, employees, partners, subsidiaries and attorneys, and all persons acting in concert with any one or more of them, or on any of their respective behalves, from using, copying, or otherwise exploiting or infringing Everest, Inc.'s Official Training Manual or its other training manuals;

D. Ordering the impounding, return, or destruction of all copies of all materials covered by Everest, Inc.'s copyrights in Defendants' possession, custody or control pursuant to 17 U.S.C. 503(a);

E.     Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid unlawful acts;

F.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

G.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

H.     Granting an award of costs of suit incurred herein;

I.     Granting an award of pre-judgment interest; and

J.     Granting such other and further relief as is just and proper.

## FIFTH CLAIM FOR RELIEF

### (MISAPPROPRIATION OF TRADE SECRETS UNDER DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836(b)(1))

### (Against All Defendants)

107.   Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-106 of this Complaint.

108.   While working as an independent contractor for Everest, Inc., Defendant Bai had access to Everest, Inc.'s confidential information and trade secrets, including customer information for customers throughout the country including, but not limited to, information about customers who are subscribed to Everest Phd, Everest MBA Online, and Everest BootCamps ("Client List"). Bai had knowledge or reason to know that Everest, Inc.'s Client List was Everest, Inc.'s trade secret and that he had a duty to maintain its secrecy and keep the Client List confidential.

109. Everest, Inc.'s Client List is considered trade secrets, as defined by the Federal Defend Against Trade Secrets Act, 18 U.S.C. § 1836(b)(1). The trade secret information obtained by Bai is related to Everest, Inc.'s services and goods that are used in or intended for use in interstate commerce. As stated above, Everest, Inc. sells its goods and services throughout the United States.

110. Everest, Inc.'s Client List derived independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Everest, Inc. also spent significant time, effort, and money in developing its Client List. For example, in order to procure customers for Everest, Inc.'s Everest PhD program, Everest, Inc. first had to devote time and attention to getting members and customers for its BootCamp programs.

111. Everest, Inc. has taken reasonable measure to maintain the secrecy of the trade secrets, including but not limited to maintaining the information in a secure manner. In particular, Everest, Inc. limited access to its Client List to its employees and independent contractors on a need to know basis and emphasized the necessity of keeping such information secret including only maintaining the Client List in a password protected location.

112. By misappropriating and denying Everest, Inc. access to its own Infusionsoft account, Defendants are denying Everest, Inc. access to its Client List.

113. Defendants have utilized and are continuing to utilize Everest, Inc.'s confidential, proprietary, and trade secrets information to solicit Everest, Inc.'s existing and prospective customers. For example, using Everest, Inc.'s Client List, Defendants have sent an email blast to Everest, Inc.'s customers, informing them that they should receive a refund from Everest, Inc. for the upcoming BootCamp scheduled for October 28-29, 2016 because Bai will not be presenting at the BootCamp. Bai further informed Everest, Inc.'s customers that he will be instead having his own version of the BootCamp the very same weekend as Everest, Inc.'s BootCamp.

114.    In doing so, Defendants are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with Everest, Inc.

115.    Defendants have misappropriated and threatened to further misappropriate the Client List by (i) acquiring such confidential information and trade secrets with knowledge or reason to know that the trade secrets were acquired by improper means; (ii) disclosing, using, and threatening to use such confidential information and trade secrets, which they acquired by improper means, without Everest, Inc.'s authorization or express or implied consent; and (iii) disclosing, using, and threatening to use such confidential information and trade secrets without Everest, Inc.'s consent with knowledge or reason to know that such information is proprietary to Everest, Inc.

116.    Everest, Inc. has suffered damages, and Defendants have been unjustly enriched in an amount to be proven at trial as a direct result of Defendants' misappropriation of Everest, Inc.'s Client List and customer information.

117.    Defendants' misappropriation has caused and continues to cause Everest, Inc. irreparable injury and cannot be fully redressed through damages alone.   An injunction prohibiting Defendants from further use or disclosure of Everest, Inc.'s Client List and customer information, and requiring the return thereof to Everest, Inc., is necessary to provide Everest, Inc. with complete relief.

118.    Defendants' misappropriation of Everest, Inc.'s trade secrets has been willful and malicious, entitling Everest, Inc. to exemplary damages.

119.    As a result of Defendants' misappropriation of Everest, Inc.'s trade secrets Everest, Inc. is also entitled to attorneys' fees.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.    Finding that Defendants have misappropriated Everest, Inc.'s trade secrets;

B.     Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid unlawful acts;

C.     Ordering Defendants to transfer control of the Client List back to Everest, Inc.;

D.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.     Using any of Everest, Inc.'s confidential information in connection with any product or service, in any medium, including future contact or business with Everest, Inc.'s customers and clients;

ii.     Further disclosing and/or using Everest, Inc.'s trade secrets and requiring the return of Everest, Inc.'s trade secrets;

iii.     Using, destroying, concealing from Everest, Inc. or disclosing any of Everest, Inc.'s trade secrets;

iv.     Using any of Everest, Inc.'s trade secrets to solicit Everest, Inc.'s customers to transfer their business to Defendants;

v.     Unlawfully soliciting or accepting any business from any Everest, Inc.'s customer;

vi.     Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 28(a) to 28(e) above.

E.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees.

F.     Granting an award of punitive and exemplary damages against Defendants;

G. Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

H. Granting an award of costs of suit incurred herein;

I. Granting an award of pre-judgment interest; and

J. Granting such other and further relief as is just and proper.

## SIXTH CLAIM FOR RELIEF

### (MISAPPROPRIATION OF TRADE SECRETS UNDER

### ILLINOIS TRADE SECRETS ACT)

### (Against All Defendants)

120. Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-119 of this Complaint.

121. While an independent contractor for Everest, Inc., Defendant Bai had access to Everest, Inc.'s confidential trade secret information, including customer information from customers throughout the country. Bai had knowledge or reason to know that Everest, Inc.'s Client List was Everest, Inc.'s trade secret and that he had a duty to maintain its secrecy and keep the Client List confidential.

122. Everest, Inc.'s Client List derived independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

123. Everest, Inc. has taken reasonable measure to maintain the secrecy of the trade secrets, including but not limited to maintaining the information in a secure manner. Access to the Client List was only provided on a need to know basis and was maintained in a password protected program.

124. By misappropriating and denying Everest, Inc. access to its own Infusionsoft account, Defendants are denying Everest, Inc. access to its Client List.

125. Defendants have utilized and are continuing to utilize Everest, Inc.'s confidential, proprietary, and trade secrets information to solicit Everest, Inc.'s existing and prospective customers. For example, using Everest, Inc.'s Client List, Defendants have sent an email blast to Everest, Inc.'s customers, informing them that they should receive a refund from Everest, Inc. for the upcoming BootCamp scheduled for October 28-29, 2016 because Bai will not be presenting at the BootCamp. Bai further informed Everest, Inc.'s customers that he will be instead having his own version of the BootCamp the very same weekend as Everest, Inc.'s BootCamp.

126. Defendants have misappropriated and threatened to further misappropriate the Client List by (i) acquiring such confidential information and trade secrets with knowledge or reason to know that the trade secrets were acquired by improper means; (ii) disclosing, using, and threatening to use such confidential information and trade secrets, which they acquired by improper means, without Everest, Inc.'s authorization or express or implied consent; and (iii) disclosing, using, and threatening to use such confidential information and trade secrets without Everest, Inc.'s consent with knowledge or reason to know that such information is proprietary to Everest, Inc.

127. Everest, Inc. has suffered damages, and Defendants has been unjustly enriched in an amount to be proven at trial as a direct result of Defendants' misappropriation of Everest, Inc.'s Client List and customer information.

128. Defendants' misappropriation has caused and continues to cause Everest, Inc. irreparable injury and cannot be fully redressed through damages alone. An injunction prohibiting Defendants from further use of disclosure of Everest, Inc.'s Client List and customer information, and requiring the return thereof to Everest, Inc., is necessary to provide Everest, Inc. with complete relief.

129. Defendants' misappropriation of Everest, Inc.'s trade secrets has been willful and malicious, entitling Everest, Inc. to punitive damages and attorneys' fees.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants have misappropriated Everest, Inc.'s trade secrets

B.     Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid unlawful acts;

C.     Ordering that Defendants transfer control of the Client List back to Everest, Inc.;

D.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.     Using any of Everest, Inc.'s confidential information in connection with any product or service, in any medium, including future contact or business with Everest, Inc.'s customers and clients;

ii.     Further disclosing and/or using Everest, Inc.'s trade secrets and requiring the return of Everest, Inc.'s trade secrets;

iii.     Using, destroying, concealing from Everest, Inc. or disclosing any of Everest, Inc.'s trade secrets;

iv.     Using any of Everest, Inc.'s trade secrets to solicit Everest, Inc.'s customers to transfer their business to Defendants;

v.     Unlawfully soliciting or accepting any business from any Everest, Inc.'s customer;

vi.     Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 33(a) to 28(k) above.

E.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

F.     Granting an award of punitive and exemplary damages against Defendants;

G.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

H.     Granting an award of costs of suit incurred herein;

I.     Granting an award of pre-judgment interest; and

J.     Granting such other and further relief as is just and proper

## SEVENTH CLAIM FOR RELIEF

### (VIOLATION OF RIGHT OF PUBLICITY ACT)

### (Against All Defendants)

130.    Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-129 of this Complaint.

131.    The Illinois Right of Publicity Act provides, "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons . . . or their authorized representative." 765 ILCS 0175/20(a)(1).

132.    Pursuant to the Act, "Individual" means a living or **deceased** natural person."

133.    The Act may be enforced by any individual or his or her authorized representative. Anderson licensed his name, license, and image to Everest, Inc.

134.    Defendants' website, social media accounts, and other materials for ECS, LLC appropriate Barry Anderson's identity because Defendants used Anderson's name, image, voice,

photograph, biographical data, and other professional characteristics. Anderson is clearly identified throughout ECS, LLC's websites, social media accounts, and materials.

135. Defendants' use of Anderson's identity was for a commercial purpose because Defendants wanted to mislead consumers to believing that Anderson was affiliated with ECS, LLC.

136. Everest, Inc. did not consent, in writing, or otherwise, to Defendants' use of Anderson's name, image, voice, photograph, biographical data, and other professional characteristics for commercial purposes.

137. Defendants profited from their unauthorized use of Anderson's identity by attracting and retaining customers who believed Anderson was affiliated with and/or endorsing ECS, LLC.

138. The gross revenue attributable to the unauthorized use of Anderson's identities, including the profit, gains, and benefits Defendants made from selling ECS, LLC's services and goods may be identified through Defendants' records.

139. Defendants have utilized and are continuing to utilize Anderson's identity without prior authorization for commercial purposes. Defendants' continued appropriation of Anderson's identity will cause irreparable damage to Everest, Inc. Everest, Inc. has no adequate remedy at law. Everest, Inc. is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with Defendants, from using Anderson's name, image, voice, photograph, biographical data, and other professional characteristics on their websites, materials, social media accounts, or for other commercial purposes.

140. Defendants' unauthorized and unlawful use of Anderson's name, image, voice, photograph, biographical data, and other professional characteristics was willful, intentional, and knowing, was done for the direct purpose of profiting off of and gaining a commercial benefit, and justifies an award of punitive damages in an amount sufficient to punish Defendants and to deter future conduct of this type.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.    Finding that Defendants have violated Barry Anderson's Right of Publicity which rights were licensed to Everest, Inc.;

B.    Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid unlawful acts;

C.    Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from using Anderson's name, image, voice, photograph, biographical data, and other professional characteristics;

D.    Granting an award of punitive and exemplary damages against Defendants;

E.    Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

F.    Granting an award of costs of suit incurred herein;

G.    Granting an award of pre-judgment interest; and

H.    Granting such other and further relief as is just and proper.

## EIGHTH CLAIM FOR RELIEF

## (CONVERSION)

### (Against All Defendants)

141.     Plaintiff realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-140 of this Complaint.

142.     At all times relevant herein, Everest, Inc. was in lawful possession of its websites, domain names, social media accounts, Litmos account, Infusionsoft account, PayPal accounts, access codes, intellectual property, computers, equipment, training manuals, video recording equipment, and Client List. Without authorization, and upon information and belief, beginning in or around June 2016 and through the present, Defendants assumed control of ownership of Everest, Inc.'s said property.  Everest, Inc. has the right to immediate possession of the property described herein.

143.     In addition, at all times relevant here, Everest, Inc. was in lawful possession of its corporate funds.  Without authorization, beginning in or around March 2016 and through the present, Defendants assumed control of ownership of Everest, Inc.'s income by transferring or diverting money that should have gone to Everest, Inc. to Defendants' own financial accounts. Everest, Inc. has the right to immediate possession of the converted money believed to be in excess of $400,000.

144.     Despite demanding Defendants to return the money Defendants' converted from Everest, Inc. and Everest, Inc.'s websites, domain names, social media accounts, PayPal accounts, Infusionsoft account, Litmos account, access codes, intellectual property, computers, equipment, training manuals, video recording equipment, Client List, and customer information, Defendants have failed to do so.   It would be unjust if Defendants were not required to return said property to Everest, Inc.

145.     Defendants' continued unlawful possession of Everest, Inc.'s property and assets will cause irreparable damage to Everest, Inc.  Everest, Inc. has no adequate remedy at law.

Everest, Inc. is entitled to an injunction requiring Defendants, their officers, agents, employees, and all persons acting in concert with Defendants, to return Everest, Inc.'s property.

146. Furthermore, as a result of Defendants' conversion of Plaintiffs' assets, Plaintiffs have suffered damages for the assets that Plaintiffs are aware is in Defendants' possession in the amount that exceeds $75,000. However, to the extent Defendants obtained additional property that is presently unknown to Plaintiffs, the amount of damages for that property is also presently unknown. When that amount is determined, Plaintiffs will amend this complaint or will request that it be amended subject to proof.

147. The aforementioned acts of Defendants, and each of them, were willful and malicious and justify an award of punitive damages in an amount sufficient to punish Defendants and to deter future conduct of this type.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A. Finding that Defendants converted Everest, Inc.'s $400,000, websites, domain names, social media accounts, PayPal accounts, Infusionsoft account, Litmos account, access codes, intellectual property, computers, equipment, training manuals, Client List, and customer information

B. Granting an award of damages suffered by Everest, Inc., as a result of Defendants' unlawful conduct, according to proof at the time of trial.

C. Ordering Defendants to return all property unlawfully converted;

D. Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from diverting any further money Everest, Inc.'s customers are paying Everest, Inc. to Defendants' own financial accounts;

E. Granting an award of punitive and exemplary damages against Defendants;

F.      Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

G.      Granting an award of costs of suit incurred herein;

H.      Granting an award of pre-judgment interest; and

I.      Granting such other and further relief as is just and proper.

## NINTH CLAIM FOR RELIEF

### (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

### (Against All Defendants)

148.    Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-147 of this Complaint.

149.    Everest, Inc. entered into valid and enforceable contracts with customers that provide that in exchange for the customers' monthly payments, Everest, Inc. will provide them with materials and lessons each month about building a successful chiropractic business.

150.    Defendants at all times mentioned here, had knowledge of Everest, Inc.'s valid existing contractual relationships with its customers as Bai used to manage the monthly subscription service and the Client List and customer information when he worked as an independent contractor for Everest, Inc.

151.    Following the death of Anderson and the termination of Bai's relationship with Everest, Inc., Bai has not returned to Everest, Inc. the Client List and customer information relating to Everest, Inc.'s monthly subscription service. Defendants have also intentionally interfered with Everest, Inc.'s contracts when they failed to provide Everest, Inc. with the passwords to access the Litmos account and Infusionsoft account so Everest, Inc. has been

unable to provide the monthly training modules to its customers and as a result Everest, Inc.'s customers are canceling their subscriptions with Everest, Inc.

152. The monthly fees have also been diverted to Defendants' financial accounts, instead of going into Everest, Inc.'s accounts. Accordingly, Defendants' actions have intentionally and unjustifiably induced Everest, Inc.'s customers into breaching their contract with Everest, Inc. as they are no longer paying Everest, Inc. for the monthly services, but to Defendants instead.

153. In addition, Everest, Inc. entered into valid and enforceable contracts with customers that provide that in exchange for the customers' payments, they can attend Everest, Inc.'s BootCamp, scheduled for October 28-29, 2016 in Chicago, Illinois.

154. Defendants at all times mentioned here, had knowledge of Everest, Inc.'s valid existing contractual relationships with its customers.

155. On October 12, 2016, Defendants emailed Everest, Inc.'s customers, informing them that they should seek for a refund for Everest, Inc.'s October BootCamp and that they should instead sign up for Defendants' mini BootCamp Bai was putting on in Chicago the very same weekend as Everest, Inc.'s BootCamp.

156. As a result of Defendants' wrongful conduct, Everest, Inc. has suffered damages in the amount that exceeds $75,000.

157. Defendants at all times mentioned here had knowledge of Everest, Inc.'s valid existing contractual relationship with its customers.

158. Defendants have intentionally diverted payments made by the vendors Defendants' financial accounts, instead of going into Everest, Inc.'s accounts. Accordingly, Defendants' actions have intentionally and unjustifiably induced the vendors into breaching their contract with Everest, Inc. as they are no longer paying Everest, Inc. for the referral services, but to Defendants instead.

159. Furthermore, as a direct and proximate result of the conduct alleged herein, Defendants have enjoyed benefits of their own wrongdoing such that an award of restitution or

disgorgement should be awarded to Everest, Inc. and imposed against Defendants and each of them.

160.     Unless and until enjoined and restrained, Defendants will continue to cause great and irreparable injury to Everest, Inc., for which Everest. Inc. has no adequate remedy at law.

161.     The aforementioned acts of Defendants, and each of them, were willful and malicious and justify an award of punitive damages in an amount sufficient to punish Defendants and to deter future conduct of this type.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants have intentionally interfered with Everest, Inc.'s contractual relations;

B.     Granting an award of restitution and disgorgement of all compensation, profits, benefits and other remuneration which may have been obtained by Defendant(s) as a result of their unlawful business acts or practices;

C.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.      further interfering with Everest, Inc.'s contractual relations with its customers;

ii.     further interfering with Everest,' Inc.'s contractual relations with chiropractor vendors; and

iii.    diverting money Everest, Inc.'s customers are paying Everest, Inc. to Defendants' own financial accounts.

D.     Granting an award of punitive and exemplary damages against Defendants;

E.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

F.     Granting an award of costs of suit incurred herein;

G.     Granting an award of pre-judgment interest; and

H.     Granting such other and further relief as is just and proper.

## TENTH CLAIM FOR RELIEF

## (INTENTIONAL INTERFERENCE WITH ACTUAL AND PROSPECTIVE ECONOMIC ADVANTAGE)

### (Against All Defendants)

162.     Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-161 of this Complaint.

163.     Everest, Inc. has enjoyed and reasonably expected to enjoy, long-term economic relationships with its customers.

164.     Everest, Inc. likely would and did expect to receive continuing economic benefits with its customers.

165.     Defendants were and are aware or should have been aware of Everest, Inc.'s business and economic relationships with its customers.   Upon information and belief, Defendants' knowledge of these economic relationships served as the foundation for Defendants' unlawful scheme to misappropriate Everest, Inc.'s confidential information, customers, and accounts.

166.     Defendants intentionally engaged in independently wrongful conduct to interfere with the relationship between Everest, Inc. and its customers to cause Everest, Inc.'s customers to cease doing business with Everest, Inc. and to transfer their business to Defendants.

167.    Defendants have in fact disrupted Everest, Inc.'s relationship with many of its customers; Everest, Inc. is informed and believes that they continue to attempt to do so.

168.    As a direct and proximate result of the conduct alleged herein, Defendants have enjoyed benefits of their own wrongdoing such that an award of restitution or disgorgement should be awarded to Everest, Inc. and imposed against Defendants and each of them.

169.    Unless and until enjoined and restrained, Defendants will continue to cause great and irreparable injury to Everest, Inc., for which Everest. Inc. has no adequate remedy at law.

170.    Defendants' conduct was despicable and in conscious disregard of Everest, Inc.'s rights so as to justify an award of punitive and exemplary damages to deter future similar conduct by Defendants.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.    Finding that Defendants have intentionally interfered with Everest, Inc.'s actual and prospective economic advantage

B.    Granting an award of restitution and disgorgement of all compensation, profits, benefits and other remuneration which may have been obtained by Defendant(s) as a result of their unlawful business acts or practices;

C.    Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.    Using any of Everest, Inc.'s confidential information in connection with any product or service, in any medium, including future contact or business with Everest, Inc.'s customers and clients;

ii.    Unlawfully soliciting or accepting any business from any Everest, Inc.'s customer;

iii.      Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 46(a) to 46 (b) above.

D.      Granting an award of punitive and exemplary damages against Defendants;

E.      Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

F.      Granting an award of costs of suit incurred herein;

G.      Granting an award of pre-judgment interest; and

H.      Granting such other and further relief as is just and proper.

## ELEVENTH CLAIM FOR RELIEF

### (VIOLATION OF THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT)

**(Against All Defendants)**

171.   Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-170 of this Complaint.

172.   The actions of Defendants as set forth in this Complaint constitute fraud, unfair competition and deceptive business practices pursuant to Illinois's Consumer Fraud and Deceptive Business Practices Act.  (815 ILCS 505/2).

173.   Defendants' conduct constitutes unfair business acts and/or practices because Defendants have deceptively and unfairly marketed, advertised, sold, and distributed goods and services using trademarks that are confusingly similar to Everest Inc. Marks.

174. Plaintiffs are informed and believe that Defendants made the representations with the intent to defraud and induce consumers into believing that ECS, LLC is the same company as Everest, Inc.

175. There is a public interest in protecting any other Illinois consumers from falling for Defendants' deceptive business practices and paying for services that are not being provided by Everest, Inc., but by Defendants instead.

176. As a direct and proximate result of Defendants' wrongful acts, Everest, Inc. has suffered and continues to suffer and/or is likely to suffer damage to its business reputation and goodwill. Defendants will continue, unless retrained, to misuse Everest Inc. Marks and to deceptively and unfairly market, advertise, and promote their business. This will cause irreparable damage to Everest, Inc., and Everest, Inc. has no adequate remedy at law. Everest, Inc. is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of consumer fraud and deceptive business practices.

177. Everest, Inc. requests that that this Court enjoin Defendants from further engaging in consumer fraud by stating or implying that there is any affiliation, connection, or association between/among Everest, Inc. and ECS, LLC.

178. Everest, Inc. is further entitled to recover from Defendants the actual damages sustained by Everest, Inc. as a result of Defendants' wrongful acts. Everest, Inc. is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendant's acts of consumer fraud and deceptive business practices.

179. Everest, Inc. is further entitled to recover from the Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts. Everest, Inc. is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of its acts of consumer fraud and deceptive business practices.

180. Because of the willful nature of Defendants' wrongful acts, Everest, Inc. is entitled to an award of punitive damages.

181.     Everest, Inc. is also entitled to recover its attorneys' fees and costs.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants have violated Illinois's Consumer Fraud and Deceptive Business Practices Act by engaging in unlawful, unfair, and fraudulent business practices.

B.     Ordering that Defendants and their subsidiaries, officers, agents, directors, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from:

i.     competing unfairly and engaging in consumer fraud and deceptive business practices with Everest, Inc. in any manner; and

ii.     stating or implying that there is any affiliation, connection, or association between/among Everest, Inc. and ECS, LLC.

C.     Granting an award of restitution and disgorgement of all compensation, profits, benefits and other remuneration which may have been obtained by Defendant(s) as a result of their unlawful business acts or practices;

D.     Granting an award of damages suffered by Everest, Inc., as a result of Defendants' unlawful conduct, according to proof at the time of trial;

E.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

F.     Granting an award of Everest, Inc.'s costs, expenses, and reasonable attorneys' fees;

G.     Granting an award of pre-judgment interest; and

H.     Granting such other and further relief as is just and proper.

## TWELFTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

### (Against All Defendants)

182.     Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-181 of this Complaint.

183.     By virtue of their above-described wrongful conduct, each Defendant received money, property, and other forms of benefits they would not otherwise have received. Defendants have no right to any funds or money resulting from converting Everest, Inc.'s property and assets and said Defendants have been unjustly enriched through their wrongful conduct. Defendants' retention of Everest, Inc.'s $400,000, websites, domain names, social media accounts, PayPal accounts, Infusionsoft account, Litmos account, access codes, intellectual property, computers, equipment, video recording equipment, training manuals, and Client List is a detriment to Everest, Inc. and violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Ordering Defendants to return all money and property by which they have been unjustly enriched;

B.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

C.     Granting an award of costs of suit incurred herein;

D.     Granting an award of pre-judgment interest; and

E.   Granting such other and further relief as is just and proper

## THIRTEENTH CLAIM FOR RELIEF

## (IMPOSITION OF A CONSTRUCTIVE TRUST)

### (Against All Defendants)

184.   Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-183 of this Complaint.

185.   As a result of the aforementioned conduct on the part of each Defendant, Everest, Inc. has been deprived of the funds, possession, ownership, control, and use of its property and assets which inured to its respective benefit.  Under the circumstances alleged, it is unfair and unjust and inequitable to allow Defendants to retain any such moneys.

186.   The Court, pursuant to its equitable powers, should impose a constructive trust in favor of Everest, Inc. upon all funds improperly obtained by Defendants which should have been inured to the benefit of Everest, Inc.

187.   In the interests of fairness, justice, and equity, this Court can and should issue an order and enter judgment:  (i) Imposing a constructive over all the moneys that Defendants owe Everest, Inc.; (ii) Decreeing that Defendants hold such funds in trust for the benefit of the Plaintiffs; and (iii) Requiring Defendants to disgorge those funds to restore those funds to Everest, Inc.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.   Ordering Defendants to hold in a constructive trust for the benefit of Everest, Inc. all income, profits, revenues, fees, and/or other funds, received by Defendants as a result of their wrongful acts;

B.   Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this

action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

C.     Granting an award of costs of suit incurred herein;

D.     Granting an award of pre-judgment interest; and

E.     Granting such other and further relief as is just and proper.

## FOURTEENTH CLAIM FOR RELIEF

### (DECLARATION OF RIGHTS)

#### (Against All Defendants)

188.     Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-187 of this Complaint.

189.     An actual controversy has arisen and now exists between Everest, Inc., on one hand, and Defendants, on the other hand.

190.     Everest, Inc. has asserted claims against Defendants of federal trademark and service mark infringement of the Everest Inc. Marks,

191.     Everest, Inc. is informed and believes that Defendants dispute that they are infringing Everest, Inc.'s trademarks and service marks.

192.     Everest, Inc. seeks that the Court issues a declaration that Defendants are infringing the Everest Inc. Marks.

193.     A judicial declaration is necessary and appropriate at this time under the circumstances in order for Everest, Inc. to ascertain its rights.  Declaratory relief will also inform the parties' future conduct and lessen the burden being caused to Everest, Inc. by the unsettled state of affairs.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.     Finding that Defendants have infringed Everest, Inc.'s trademark rights under 15 U.S.C. § 1114;

B.     Ordering that Everest, Inc. is the exclusive owner of Everest Inc. Marks, and that said trademarks are valid;

C.     Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

D.     Granting an award of costs of suit incurred herein;

E.     Granting an award of pre-judgment interest; and

F.     Granting such other and further relief as is just and proper.

## FIFTEENTH CLAIM FOR RELIEF

### (ACCOUNTING)

### (Against All Defendants)

194.     Everest, Inc. realleges and incorporates herein by reference, as though set forth in full, paragraphs 1-193 of this Complaint.

195.     As described in herein, Defendants engaged in wrongful conduct in violation of federal trademark, service mark, copyright, and trade secrets law.  Defendants have also unlawfully intentionally interfered with Everest, Inc.'s economic advantage and contractual relations and have converted money from Everest, Inc.

196.     The wrongful actions of Defendants described herein will enable and/or have enabled Defendants to deprive Everest, Inc. from benefits, property, profits and/or money belonging to Plaintiffs. Defendants should not be permitted to hide their accounts and the profits they have earned through their improper conduct.

197.     Everest, Inc. does not have an adequate remedy of law and pursuant to federal and state law, including but not limited to the Lanham Act, Everest, Inc. is entitled to an account for any and all profits earned as a result of Defendants' aforesaid acts of infringement, unfair competition, and other wrongful conduct.

198.    Everest, Inc. therefore requests from the Court to order from Defendants an accurate, detailed and itemized accounting of all of Defendants' revenue and profits earned as a result of Defendants' trademark infringement, false advertising and designation of origin, dilution of the Everest, Inc. Marks, misappropriation of Everest, Inc.'s trade secrets, intentional interference with Everest, Inc.'s prospective economic advantage and contractual relations; violation of Everest, Inc.'s right to publicity, and engagement in unfair and deceptive business acts for the pertinent time-frame in order to calculate the amount of moneys owed by Defendants to Everest, Inc.

**WHEREFORE**, Everest, Inc. prays for relief and judgment as follows:

A.    Ordering the Defendants account to Everest, Inc. for any and all profits earned as a result of Defendants' aforesaid unlawful acts;

B.    Ordering that Defendants and their subsidiaries, officers, agents, directors, managers, members, servants, employees, partners, representatives, licensees, related companied, assigns, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined, on a worldwide basis, preliminarily during the pendency of this action and permanently thereafter from continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

C.    Granting an award of costs of suit incurred herein;

D.    Granting an award of pre-judgment interest; and

E.    Granting such other and further relief as is just and proper.

Respectfully submitted,

Dated:  October 24, 2016                    By:/s/ Ari J. Rosenthal_____
*Attorneys for Plaintiff Everest Coaching*
*Systems, Inc.*

Ari J. Rosenthal, Esq.
LAW OFFICES OF ARI J.
ROSENTHAL
608 S. Washington, Suite 309
Naperville, IL 60540
Telephone: (630) 730-6577

## **JURY DEMAND**

Everest, Inc. hereby demands a trial by jury to the maximum extent allowed by law.

Respectfully submitted,

Dated:  October 24, 2016                    By:/s/ Ari J. Rosenthal_____
*Attorneys for Plaintiff Everest Coaching*
*Systems, Inc.*

Ari J. Rosenthal, Esq.
LAW OFFICES OF ARI J.
ROSENTHAL
608 S. Washington, Suite 309
Naperville, IL 60540
Telephone: (630) 730-6577